ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/15/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MADISON MAIDENS, INC.

        Plaintiff,

-against-                No. 05 Civ. 4585 (LTS) (JCF)

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

In this insurance action, Plaintiff Madison Maidens, Inc. ("Madison Maidens" or "Plaintiff"), a lingerie design and manufacturing company, claims that Defendant American Manufacturers Mutual Insurance Company ("American Manufacturers" or "Defendant"), its insurer, breached the provisions of an insurance policy issued by Defendant to Plaintiff by failing to make payment on a claim for lost business income due to business interruption. The Court has jurisdiction of this diversity action pursuant to 28 U.S.C. Section 1332.

Defendant moves for summary judgment dismissing Plaintiff's complaint in its entirety. Plaintiff opposes this motion, arguing that there are genuine issues of material fact to be decided and that Defendant's motion should be denied due to failure to submit a Local Civil Rule 56.1(a) statement with the original motion. For the reasons that follow, the Court waives the Rule 56.1(a) requirement, Defendant's motion is granted, and Plaintiff's complaint is dismissed in its entirety.

## BACKGROUND

The following material facts are undisputed unless otherwise stated. On January 25, 2002, Plaintiff's office suite and equipment suffered water damage due to a leak first noticed at approximately 5:00 pm that evening. Affirmation of Mary Beth Jefferds, dated May 1, 2006, ("Jefferds Aff."), ¶ 3. Madison Maidens' offices close early on Fridays for reasons of religious observance. Examination Under Oath of Steven Kattan ("Kattan Dep.") 142-43. As a result of the water damage, at least some employees had to work on the salvaging of office supplies, documents and workspace the following Monday and for some time thereafter. Jefferds Aff. ¶¶ 9-10, Kattan Dep. 152. One employee has asserted that everyone she saw in the immediate aftermath of the flooding (Friday evening and Monday) was concentrating on "clean up and damage assessment efforts," and that at least the Sales area of the office was not able to function on those days. Jefferds Aff. ¶ 9. There is, however, uncontroverted evidence that at least two of Plaintiff's employees returned to work on Monday, January 28, 2002, and were able to perform their normal duties. Deposition of Maria Przetakiewicz ("Przetakiewicz Dep.") 13, Deposition of Lisa Glickman ("Glickman Dep.") 12-13.

Plaintiff held an insurance policy with American Manufacturers for the period between June 1, 2001, and June 1, 2002. The policy provisions included coverage for business personal property loss and business interruption loss at Plaintiff's business offices. Following the January 25, 2002, incident, Plaintiff submitted both a property damage claim and a $952,480.42 lost business income claim under the policy. The Defendant made payment on the property damage claim but has denied the business interruption claim.

The "Business Income Loss" provision of the insurance policy provides that

Defendant "will pay for the actual loss of 'business income' [Plaintiff] incur[s] due to the necessary suspension of [its] 'operations' during the 'period of restoration'" in connection with caused property damage. Further business income loss coverage is provided for under an "Extended Period of Indemnity" provision of the policy, which provides (in pertinent part) that, "[i]f the necessary suspension of your 'operations' produces a 'business income' loss payable under this policy and you resume 'operations' with reasonable speed, we will pay for the actual loss of 'business income' you incur during the 'extended period of indemnity.'" Defendant asserts that, since at least some employees were able to work on the Monday following the incident, there was no "necessary suspension," and that Plaintiff therefore does not qualify for the Business Income Loss coverage.

## DISCUSSION

*Compliance with Rule 56.1*

Defendant failed to include in its moving papers a statement of undisputed facts as required by Rule 56.1 of the Local Civil Rules of this Court; Plaintiff asserts that Defendant's motion should for that reason be denied. S.D.N.Y. Local Civil Rule 56.1(a) provides that:

> Upon any motion for summary judgment pursuant to Rule 56
> of the Federal Rules of Civil Procedure, there shall be annexed
> to the notice of motion a separate, short and concise statement,
> in numbered paragraphs, of the material facts as to which the
> moving party contends there is no genuine issue to be tried.
> Failure to submit such a statement may constitute grounds
> for denial of the motion.

The nonmoving party is then to respond to the movant's statement paragraph by paragraph,

identifying the facts as to which it contends there is a dispute as well as the relevant evidence. Local Civil Rule 56.1(b). The purpose of the Local Rule 56.1 statement is to assist the court in determining which facts are genuinely undisputed. Kinstler v. First Reliance Standard Life Ins. Co., 1997 WL 401813, *4 (S.D.N.Y. 1997). The requirement that the moving party submit its statement with its original motion allows the nonmoving party the opportunity to challenge the statements made by the moving party. The Court, however, has the authority to waive compliance with the rule and proceed based on an analysis of the record. See id..

While Plaintiff correctly notes that a court may not grant summary judgment absent a 56.1 statement if the lack of such statement has prevented the nonmoving party from challenging the moving party's factual assertions, Grant v. City of New York, 1992 WL 77562, *4 (S.D.N.Y. 1992), such is not the situation before the Court. In the instant matter, Defendant's opening papers included extensive discussion of the facts it contended were undisputed. Plaintiff was able to respond to that discussion both in its opposition brief and in Plaintiff's own separate statement of undisputed facts. Furthermore, Defendant served and submitted a statement of facts, consistent with the factual position taken in its opening brief, with its reply brief. The Court therefore has a sufficient factual basis for ruling on the motion, and finds that neither party has been prejudiced. The Court, accordingly, waives compliance with the rule.

*Summary Judgment Standard*

A moving party shall be granted summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material to a ruling on summary judgment "if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). As interpreted by the Second Circuit, the rule requires that the "party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 596-87 (1986) (alteration and emphasis in original)).

*Breach of Policy Provisions*

The insurance policy in question provides for business interruption coverage in the event of a "necessary suspension of your 'operations'". Courts have interpreted such wording as requiring a <u>total cessation</u> of all business operations. See Ramada Inn v. Ramogreen, Inc. v. The Travelers Indem. Co. Of Am., 835 F.2d 812, 814 (11th Cir. 1988) (denying a hotel's business interruption claim because, while the hotel's restaurant had been destroyed, causing business to slow down, the hotel rooms were still intact, allowing the hotel to remain open albeit at a reduced level of business); Royal Indem. Ins. Co. v. Mikob Props., Inc., 940 F. Supp. 155, 159 (S.D. Tex. 1996) (deciding that a business interruption clause was not triggered when a building complex lost one building and amenities common to the two remaining buildings in a

fire because the complex did not have to be closed down entirely); The Home Indem. Co. v. Hyplains Beef, 893 F. Supp. 987, 991-92 (D. Kan. 1995) (holding that a "necessary suspension" of business meant a complete cessation); Buxbaum v. AETNA Life & Casualty Co., 103 Cal. App. 4th 434, 444 (2002) (finding that the use of the term "necessary suspension" clearly indicated that an insurance policy could only be triggered by a total shutdown of the business); 54th St. Ltd. Partners v. Fid. & Guar. Ins. Co., 763 N.Y.S. 2d 243, 243 (App. Div.1st Dep't 2003) ("Contrary to plaintiff's contention, the language of the subject policy clearly and unambiguously provides that for business interruption coverage to be triggered, there must be a 'necessary suspension," i.e., a total interruption or cessation."); Howard v. Foremost Ins. Co., 82 A.D.2d 398, 401 (N.Y. App. Div. 1981) (ruling that, because there was no cessation in business activity, a store could not recover lost profits caused by water damage to some of its merchandise); Keetch v. Mutual of Enumclaw Ins. Co., 831 P.2d 784, 786 (Wash. Ct. App. 1992) (finding that, although the hotel's business slowed after a nearby volcanic eruption, the hotel never had to close down and therefore could not recover under its business interruption policy).

For example, in Buxbaum, a case striking in its similarity to the instant action, the plaintiff law firm sued its insurance company for breach of policy provisions for denying the firm's claim based on business income loss due to business interruption. Buxbaum, 103 Cal. App. 4th at 437. The firm had suffered water damage to its office, and had to devote time and attention to clean-up and repair work. Id. at 438. However, the firm was denied coverage, under policy terms identical to those before the Court in the instant matter, because attorneys working in the office had billed hours on the day that the flood damage was discovered and, therefore, there had not been a suspension of operations. Id. at 447-48. The Buxbaum Court held:

> In order for business income coverage to apply, the Policy requires that there be a 'necessary suspension' of operations. This term is not defined in the policy. . . . [¶] Webster's Third New International Dictionary defines 'suspension' as 'the act of suspending or the state or period of being suspended, interrupted, or abrogated.' 'Suspended' is defined as 'temporarily debarred, inactive, inoperative.' These definitions comport with what appears to be the common understanding of the term 'suspension', that is, that it connotes a temporary, but *complete, cessation* of activity. Thus, if one were to apply the plain, ordinary meaning to the use of the phrase 'necessary suspension' within the policy, in order for a claim to fall within the coverage provision it would require that any direct physical loss of or damage to property result in the cessation of [the insured's] operations. . . .

Id., at 444 (quoting Hyplains Beef, 893 F. Supp. at 991). The Court finds this reasoning persuasive. Thus, under Plaintiff's substantially identical Business Income Loss policy provision, a <u>complete cessation</u> of activity, even a temporary one, was required. Cf. Nat'l Children's Expositions Corp. v. Anchor Ins. Co., 279 F.2d 428, 430 (2d Cir. 1960) (allowing no recovery under a policy providing for reimbursement of business losses in the event that specified hazards "prevent[ed] the holding of or continuance of" an exhibition, where a snowstorm reduced attendance but did not cause closure of premises at any time during the exhibition).

Further support for this interpretation of the "Business Income Loss" provision can be found in the language of the Extended Period of Indemnity provision, which provides in relevant part that, "[i]f the necessary suspension of your 'operations' produces a 'business income' loss payable under this policy, and you resume 'operations' with reasonable speed, we will pay for the actual loss of 'business income' you incur during the 'extended period of indemnity.'" The use of the world "resume" indicates that "there must necessarily have been a stoppage of operations from which it was necessary to begin anew." Hyplains Beef, 893 F. Supp.

at 993. See also Buxbaum,103 Cal. App. 4th at 445; Keetch, 831 P.2d at 787.

Defendant has presented deposition testimony from two former employees of Madison Maidens, both of whom testified that they had been able to conduct their roles in Plaintiff's business as usual on Monday January 28, 2002. Przetakiewicz Dep. 13; Glickman Dep. 12-13. Defendant's evidence thus shows that there was no "total cessation" of Plaintiff's business operations. Plaintiff, therefore, "has the burden of providing similar support setting forth specific facts about which a genuine triable issue remains." Borthwick v. First Georgetown Securities, Inc., 892 F.2d 178, 181 (2d Cir. 1989). Conclusory statements "do not provide a sufficient basis for a non-moving party to resist summary judgment." Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996). A Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co., 475 U.S. at 586. A plaintiff must "come forward with enough evidence to support a jury verdict in [his] favor. . . ." Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992) (citing Bryant v. Mafucci, 923 F.2d 979, 982 (2d Cir. 1991), *cert. denied*, 501 U.S. 849 (1991)).

Plaintiff has proffered the affidavit of Mary Beth Jefferds, who asserts that "[t]here is no question that the business operations of Madison Maiden[s] totally ceased on Friday, January 25, 2002. The business functions returned on a very piecemeal basis commencing on Tuesday, January 29, 2002." Jefferds Aff. ¶ 11. Jefferds's conclusory assertion, which is not supported by specific personal observations as to the activities of Plaintiff's business operations outside of the Sales area of the offices, does not sufficiently controvert the testimony of the two employees who testified that they were able to conduct business on Monday. Her more specific factual statements regarding the office environment relate primarily to the Sales area and do not

controvert the testimony of the other two employees or depict a complete shut-down of the business. See Jefferds Aff. ¶¶ 8-9. Moreover, Ms. Jefferds specifically notes that there were unaffected areas in the suite and emphasizes that damage was done to the rear offices. She does not mention those in front. See Jefferds Aff. ¶¶ 4, 8.

On this record, even when viewed in the light most favorable to the Plaintiff, no reasonable fact-finder could determine that there was a complete cessation of Madison Maidens' business operations as a result of the January 25, 2002 leak. There is therefore no issue of material fact as to whether Plaintiff is entitled to recover under the policy for business income loss. Accordingly, Defendant is entitled as a matter of law to summary judgment dismissing Plaintiff's cause of action.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment dismissing Plaintiff's complaint is granted. The Clerk of Court is respectfully requested to enter judgment in Defendant's favor and close this case.

SO ORDERED.

Dated: New York, New York
       June 14, 2006

LAURA TAYLOR SWAIN
United States District Judge